IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SPANX, INC.,

         Plaintiff,

v.

TIMES THREE CLOTHIER, LLC,
d/b/a YUMMIE TUMMIE,

         Defendant.

1:13-cv-710-WSD

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Transfer, or, in the Alternative, Stay This Action [4] ("Motion to Transfer").

**I.   BACKGROUND**

On March 5, 2013, Plaintiff Spanx, Inc. ("Spanx") filed this declaratory judgment action against Defendant Times Three Clothier, LLC d/b/a Yummie Tummie ("TTC"). Spanx seeks a declaration that its products do not infringe certain design patents held by TTC.

    A.   Parties

Spanx and TTC compete in the business of manufacturing shapewear clothing. Spanx, formed in 2000, is based in Atlanta. According to a March 2012 Forbes magazine article, Spanx is now valued at approximately $1 billion.

TTC entered the shapewear market in 2007, and is based in New York City. TTC holds several design patents related to shapewear, including seven patents at issue in this action (the "Disputed Patents").

B.  Procedural History

On January 18, 2013, TTC sent Spanx a cease-and-desist letter asserting that certain of Spanx's products infringe the Disputed Patents and demanding that Spanx stop selling the allegedly infringing products and pay damages to TTC. On February 14, 2013, Spanx responded to TTC's cease-and-desist letter in writing, offering to engage in discussions to resolve the dispute.

On February 22, 2013, Spanx's and TTC's attorneys held a telephone conference to discuss TTC's allegations. TTC's counsel informed Spanx's counsel that TTC would file an infringement suit if a resolution was not reached. At the conclusion of the conference, the attorneys agreed to confer again after consulting with their clients. On March 5, 2013, counsel for the parties held a second telephone conference. Spanx's attorney proposed a resolution to the dispute, which TTC's attorneys agreed to discuss with their client. The same day, Spanx filed this declaratory judgment action in this Court.

On April 2, 2013, TTC filed a patent infringement action against Spanx in the United States District Court for the Southern District of New York (the "New

York Action"). In the New York Action, TTC alleges that Spanx has infringed six of TTC's design patents, including four of the Disputed Patents at issue in this case.[1] The parties appear to agree that, despite the lack of complete overlap between the patents at issue, the subject matter of this case and the New York Action is the same.

On April 2, 2013, TTC, filed in this case, its Motion to Transfer seeking the transfer of venue in this matter from this Court to the Southern District of New York. Alternatively, TTC seeks a stay of this case pending resolution of the New York Action.

## II. DISCUSSION

A district court may transfer an action to another district, where the case could have been brought originally, "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a). See generally Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (holding that the purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (quotations omitted). The party seeking transfer of an action bears the burden of

---

[1] Spanx has indicated to the Court that it will seek to add the remaining New York Action patents to this case.

3

establishing that the balance of Section 1404(a) interests favors transfer. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). A district court may consider several factors in evaluating a motion to transfer, among them: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 & n.1 (11th Cir. 2005). The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (reviewing district court's transfer of venue for "clear abuse of discretion").

  TTC moves for the transfer of this action to the Southern District of New York, where TTC has its headquarters and where the New York Action is pending. Spanx does not dispute, and the Court finds, that this action could have been brought originally in that district. See 28 U.S.C. § 1400(b) (2006) ("Any civil action for patent infringement may be brought in the judicial district where the

defendant resides . . . ."); see also VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990) (holding that under § 1400(b) a corporate defendant "resides" in a district in which it is subject to personal jurisdiction); DUSA Pharm., Inc. v. River's Edge Pharm., LLC, No. CIV 06-1843 (SRC), 2006 WL 1320049, at *2 n.1 (D.N.J. May 15, 2006) (explaining that VE Holding applies to limited liability companies).  The Court evaluates the Manuel factors to determine whether transfer is appropriate.  See 430 F.3d at 1135 & n.1.

        1.    *Convenience of Witnesses and Ability to Compel Unwilling Witnesses*

In evaluating the convenience of witnesses, the Court focuses on non-party witnesses' willingness and ability to testify in the forum.  See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010); Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004).  Witnesses closely aligned with the parties, like employees, are presumed to be willing to testify in different forums because their presence can be obtained by the parties themselves.  Trinity, 761 F. Supp. 2d at 1327; Ramsey, 323 F. Supp. 2d at 1356.  The parties have not identified any potential non-party witnesses or witnesses not employees of a party.  The Court finds that the "convenience of witnesses" and "ability to compel unwilling witnesses" factors do not favor either party in this case.  See Trinity, 761 F. Supp. 2d at 1327

("[B]ecause neither party has presented evidence of nonparty witnesses other than its employees, this factor is neutral.").

### 2. *Access to Sources of Proof*

In evaluating access to sources of proof, the Court looks to the location of documents and other tangible materials and the ease with which the parties can transport the materials to trial. Trinity, 761 F. Supp. 2d at 1327. The parties all have relevant documents in their home states, and there is no evidence that either party maintains relevant documents or materials in any other state or that the volume of information in one party's possession exceeds that of the other. The Court finds that the "access to sources of proof" factor does not favor either party in this case.

### 3. *Convenience of the Parties*

In evaluating the convenience of the parties, the Court looks to whether the inconvenience of the present forum to the moving party substantially outweighs the inconvenience of the proposed alternative forum to the non-moving party. See Oien v. Thompson, 824 F. Supp. 2d 898, 903 (D. Minn. 2010) (citing Van Dusen, 376 U.S. at 645–46). The Court may not simply shift inconvenience from one party to the other. See United States v. $633,021.67, 842 F. Supp. 528, 535 (N.D. Ga. 1993).

Either party will suffer the inconvenience associated with making its employee-witnesses available in the proceeding if the litigation is situated in the other party's home state. The Court finds that the inconvenience of litigating in either this District or in New York does not substantially outweigh the inconvenience of litigating in the other venue. The Court concludes that the "convenience of the parties" factor does not favor either party.

4.   *Locus of Operative Facts*

The "loci of operative facts" in this matter appear to include both New York, where TTC's patents were developed, and Georgia, where Spanx's allegedly infringing products were designed, and the parties agree that this factor is neutral.

5.   *Relative Means of the Parties*

Although TTC has submitted evidence showing that Spanx is a "billion-dollar company," TTC has not submitted any evidence showing its value. TTC has only offered a declaration stating that TTC is "significantly smaller" than Spanx. On this record, the Court cannot conclude that either party is financially better able to litigate in a distant forum. The Court concludes that the "relative means of the parties" factor does not favor either party.

6.   *Familiarity with Governing Law*

The parties agree that both this Court and the United States District Court for the Southern District of New York are equally familiar with, and able to apply, the governing patent law.  The "familiarity with the governing law" factor does not favor either party.

7.   *Weight Afforded to Plaintiff's Choice of Forum*

The plaintiff's choice of forum is usually given considerable weight in evaluating whether transfer is appropriate.  See, e.g., Robinson, 74 F.3d at 260.  This is especially true when the plaintiff has chosen to litigate in its home forum.  See Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1311–12 (11th Cir. 2002) (citing Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)); see also In re Link_A_Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011) (explaining that the plaintiff's choice of forum is entitled to less deference when plaintiff files suit outside of its home forum).  In this case, Spanx, an Atlanta-based company, filed suit in its home forum before TTC filed the New York Action.  Spanx argues the Court should respect the first-filed rule.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v.

Wycoff Co., 344 U.S. 237, 241 (1952)).  The Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).  District courts have discretion to decline to entertain a declaratory judgment action, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Wilton, 515 U.S. at 282.  "In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties."  Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982).

   The Eleventh Circuit has explained that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption . . . that favors the forum of the first-filed suit under the first-filed rule."  Manuel, 430 F.3d at 1135.  This "first-filed rule is not applied mechanically," however, and "exceptions are made for compelling circumstances."  Soroka v. Lee Techs. Servs., Inc., No. 1:06-cv-710-TWT, 2006 WL 1734277, at *4 (N.D. Ga. June 19, 2006) (citing Manuel, 430 F.3d at 1135).  A district court may find a "compelling circumstance" to decline to hear a first-filed case if the "action was filed in apparent anticipation of the other pending proceeding."  Manuel, 430

F.3d at 1135 (quoting Ven-Fuel, 673 F.2d at 1195); see also Ven-Fuel, 673 F.2d at 1195 (holding that the district court properly exercised its discretion not to hear a first-filed declaratory judgment action that had been filed "in apparent anticipation" of a direct action by the opposing party).

The facts are plain here. Spanx's filing in this district was a preemptive first filing before TTC filed in New York. Before the filing of this action, TTC sent Spanx a cease-and-desist letter informing Spanx of its alleged patent infringement and warning Spanx that, in the absence of a satisfactory response, TTC would file suit. The parties subsequently engaged in settlement discussions, and, as Spanx concedes, Spanx filed this action only while the discussions were not ongoing. The timing is revealing. Spanx filed the same day it conferred with TTC's counsel and TTC's counsel committed to discuss Spanx's settlement proposal with TTC. Despite these ongoing discussions and TTC's counsel's representation to pursue settlement by discussing the settlement terms proposed, Spanx apparently already had its declaratory judgment complaint prepared and chose to file it before TTC responded to Spanx's March 5, 2013, proposed settlement terms. This sequence of events shows that Spanx filed this action in anticipation of a direct action by TTC. Cf. Soroka, 2006 WL 1734277, at *5 (holding that the plaintiff's filing of a declaratory judgment action, only after the defendant's notification of its intent to

enforce a restrictive covenant, showed that the action was not filed to resolve uncertainty but in anticipation of the defendant's direct action). Put another way, Spanx perceived that an infringement action would be filed against it based on TTC's patents and elected to file a strategic first pleading. The "first-filed rule" thus does not apply, and the Court may exercise its discretion to dismiss or stay this case. See Ven-Fuel, 673 F.2d at 1195; Soroka, 2006 WL 1734277, at *5.[2]

This action is "anticipatory," and the Court finds that Spanx's choice of forum is not entitled to any deference. See Soroka, 2006 WL 1734277, at *5. The "weight accorded plaintiff's choice of forum" factor in this case thus does not favor denying transfer.

### 8. *Trial Efficiency and Interests of Justice*

In evaluating trial efficiency and interests of justice, the Court looks at whether the case may be resolved more expeditiously in the alternative forum. See Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 842 F. Supp. 2d 1360, 1368–69 (N.D. Ga. 2012); Trinity, 761 F. Supp. 2d at 1330. "[T]he fact that a substantially similar action is pending currently in the transferee court counsels in

---

[2] In the Motion to Transfer, Plaintiff requests, in the alternative, that the Court stay this matter. Because the Court concludes that transfer is appropriate, the Court does not decide here whether the case should, in fact, be stayed in favor of the New York Action.

favor of transfer because of the opportunity for consolidation and, thus, the conservation of judicial resources." Soroka, , 2006 WL 1734277, at *4 (citing Carl v. Republic Sec. Bank, No. 018981 CIVHURLEY, 2002 WL 32167730, at *4 (S.D. Fla. Jan. 22, 2002); Martin v. S.C. Bank, 811 F. Supp. 679, 685 (M.D. Ga. 1992); Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 483 (D. Del.1987)).

The purpose of a Section 1404(a) transfer is to promote litigation efficiency by preventing waste of time, energy, resources, and duplication and to deter one-ups-manship filings. If this case is not transferred—or stayed—it is certain that the resolution of the patent dispute will be inefficient, inconvenient, and unnecessarily expensive.[3] Transfer to the Southern District of New York would allow for consolidation with the New York Action. The New York Action is, the parties acknowledge, at a more advanced stage than this case. In the New York Action, the parties already have engaged in mediation before a magistrate judge, and they currently are in the process of preparing claim construction briefs. The "trial efficiency and interests of justice" factor strongly and convincingly favors transfer of this action to the Southern District of New York.

---

[3] The Court notes that neither party has moved for a stay of the New York Action in favor of this case, or for the transfer of the New York Action to this Court. If this case is not transferred to New York, there is no indication that the New York Action would not proceed and parallel litigation would ensue.

The Court concludes that "the balance of § 1404(a) interests" favors transfer, and the Court necessarily concludes that TTC's Motion to Transfer should be granted.[4]

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer, or, in the Alternative, Stay This Action [4] is **GRANTED**.  This action is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York.

**SO ORDERED** this 15th day of October, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that the facts here show that Spanx engaged in a preemptive filing for the purpose of securing what it perceived as a more favorable litigation forum.  This was done even though Spanx represented that it was interested in TTC considering its settlement proposal.  A transfer has the natural effect of discouraging the kind of litigation advantage-taking in which Spanx engaged.  The Court also notes that counsel for Spanx has a significant presence in New York.